1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11    ADAM BARON,                              Case No. 1:22-cv-00957-CDB

12              Plaintiff,                      Member Cases: No. 1:23-cv-00217-CDB; No.
                                                1:23-cv-00301-CDB; No. 1:23-cv-01067-CDB;
13         v.                                   No. 1:24-cv-00246-CDB

14    GALACTIC ENTERPRISES, LLC, *et al.*,      ORDER GRANTING REQUESTS FOR
                                                JUDICIAL NOTICE
15              Defendants.
                                                (Docs. 59-7, 69)
16
                                                ORDER GRANTING IN PART AND
17                                              DENYING IN PART DEFENDANTS'
                                                MOTION FOR PARTIAL SUMMARY
18                                              JUDGMENT

19                                              (Doc. 59)

20

21         Pending before the Court is the motion of Defendants Galactic, Co., LLC, Virgin Galactic,

22    LLC, and Galactic Enterprises, LLC (collectively, "Defendants" or "Galactic") for partial summary

23    judgment and request for judicial notice in support thereof, filed on May 30, 2025.  (Docs. 59, 59-

24    7).  On June 13, 2025, consolidated Plaintiffs Adam Baron, Richard Mondoux, Jonathon Upton

25    Knittle, Christopher A. Carrera, and John Mourkos (collectively, "Plaintiffs") filed an opposition

26    to Defendants' motion, a separate statement of uncontroverted facts in support thereof, and a

27    request for judicial notice.  (Docs. 66, 67, 69).  On June 20, 2025, Defendants filed a reply in further

28    support of their motion for partial summary judgment and a response and evidentiary objections to

1    Plaintiffs' separate statement of uncontroverted facts.  (Docs. 71, 72).  The Court convened for

2    hearing on Defendant's motion on July 14, 2025.  (Doc. 74)

3        For the reasons that follow, Defendants' motion will be granted in part.

4    **I.    <u>Background</u>**

5        **A.    Relevant Procedural Posture**

6        On December 1, 2023, the Court consolidated the instant action, Case No. 1:22-cv-00957-

7    CDB ("*Baron*"), with *Mondoux v. Galactic Enterprises, LLC.*, Case No. 1:23-cv-00217-CDB

8    ("*Mondoux*"), and *Upton-Knittle v. Galactic Enterprises, LLC*, Case No. 1:23-cv-00301-CDB

9    ("*Knittle*"), and denominated *Baron* as the Lead Case.  (Doc. 38).  On August 1, 2024, the Court

10   granted the parties' stipulated request to consolidate *Christopher A. Carrera v. Galactic Co., LLC,*

11   *et al.*, Case No. 1:24-cv-00246-CDB ("*Carrera*") and *John Mourkos v. Galactic Enterprises, LLC*,

12   Case No. 1:23-cv-01067-CDB ("*Mourkos*") with the consolidated *Baron* action.  (Doc. 47).

13       This consolidated action is brought by former employees of Defendants, which are wholly

14   owned subsidiaries of Virgin Galactic Holdings, Inc.  *See* (Doc. 38 at 2).  Plaintiffs bring claims

15   under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. for termination and

16   retaliation based on religion and failure to provide religious accommodation, and related claims

17   under California's Fair Employment and Housing Act ("FEHA") (Cal. Gov't. Code §12900 *et seq*.)

18   for  discrimination  and  retaliation  based  on  religious  creed,  failure  to  provide  religious

19   accommodation, as well as common law tort.  *Id.*

20       On May 29, 2025, the Court granted the parties' construed stipulated request for leave to

21   file a first amended complaint to remove certain claims.  (Docs. 56, 58).  On June 4, 2025,

22   individual Plaintiffs filed respective first amended complaints against Defendants.  (Docs. 61-65).

23       On May 30, 2025, Defendants filed the pending motion for partial summary judgment on

24   Plaintiffs' claims for retaliation and punitive damages under Title VII and under FEHA and for

25   failure to provide religious accommodation under FEHA.  (Doc. 59).

26       Following the Court's July 14, 2025, hearing on Defendants' pending motion (Doc. 74),

27   and pursuant to the Court's order (Doc. 75), counsel for Plaintiffs filed the deposition transcript

28   excerpts cited in Plaintiffs' opposition and separate statement of uncontroverted facts in support

2

1    thereof (Doc. 76).

2        **B.    Relevant Facts**

3        The Court draws the following facts from the parties' joint statement of undisputed facts

4    (Doc. 59-3) and from other facts deemed undisputed by Plaintiffs (Doc. 67), except where noted.

5    Further, at the Court's direction (*see* Doc. 73), Defendants lodged full copies of Plaintiffs'

6    deposition transcripts, which the Court reviewed and considered.  To the extent material disputes

7    exist as raised in the parties' separate statements of undisputed facts (*see* Docs. 67, 72), unless

8    otherwise stated, the Court will look to the version most favorable to Plaintiffs as the non-moving

9    party.  *See Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005).

10        1.    Galactic and its COVID-19 Vaccine Policy and Exemption Request Process

11        Galactic is a vertically integrated aerospace company and a manufacturer of advanced air

12    and space vehicles.  (Doc. 59-3 ¶ 1).  Galactic is an equal opportunity employer and has policies in

13    place to prevent harassment, discrimination, and retaliation in the workplace, including a policy to

14    provide reasonable accommodations in the workplace.  (Doc. 67 ¶¶ 1, 2).

15        In response to the then-ongoing COVID-19 pandemic and a federal mandate, on October

16    14, 2021, Galactic communicated that all regular full-time employees, including contractors and

17    consultants, would be required to become fully vaccinated by December 8, 2021.  *Id.* ¶ 3; (Doc. 76-

18    1 at 126; Doc. 76-3, Exhibit ("Ex.") 11).  Galactic's vaccine policy, which was communicated to

19    employees both as a response to the federal mandate and as a way to ensure workplace safety,

20    allowed for religious and medical exemptions.[1]  *Id.* ¶ 4; *see* (Doc. 67 at 23, ¶ 1).  On October 22,

21    2021, Galactic advised its employees in a follow-up email communication of required vaccination

22    dates, including dates of on-site vaccination clinics and the December 8, 2021, vaccination

23    deadline, and of how to request a religious or medical exemption from the vaccination requirement.

24    (Doc. 59-3 ¶ 2).  All employees were eligible to apply for and receive an approved exemption based

25    on religious or medical reasons; however, those with approved exemptions were required to submit

---

27    [1] Although Plaintiffs dispute Defendants' contention that its vaccine policy was to ensure
28    workplace safety, there is no disputed issue of fact that Defendants communicated to Plaintiffs that
     the vaccine policy was to ensure workplace safety; the evidence Plaintiffs cite to the contrary is
     unpersuasive.  *See* (Doc. 67 ¶ 4).

1    to a daily health screen, always use a KN95 mask during in-person work, and be tested weekly for

2    COVID-19. *Id.* ¶ 3. Galactic's People Team reviewed each exemption request before discussing,

3    in conjunction with operational leaders for each employee's work group, the employee's specific

4    duties and logistics of his position.[2] (Doc. 67 ¶¶ 5, 6). Thereafter, the People Team presented

5    information regarding each employee's job duties and responsibilities to the Intake COVID-19

6    Panel (the "Panel"), a panel created to review exemption requests.[3] *Id.* ¶ 7. The Panel analyzed

7    whether Galactic could accommodate each employee's exemption request from the vaccine policy.[4]

8    *Id.* ¶ 8. The Panel considered whether the accommodation request posed an undue hardship on

9    Galactic given the nature and functions of each employee's job. [5] *Id.* ¶ 9. The Panel analysis

10

11        [2] Plaintiffs dispute this fact based in part on Defendants' alleged mischaracterization of
12    Plaintiff Baron's deposition testimony and, in part, on their challenge to the supporting declaration
      of Defendant's Senior Director of Employee Relations, Taline Cole (*see* Doc. 59-4), as lacking
13    foundation and personal knowledge under Federal Rule of Evidence 602. Doc. 67 ¶ 6. Plaintiffs
      rely upon Ms. Cole's linkedin.com profile to show the profile lacks information as to her role with
14    Defendants in review of Plaintiffs' exemption requests and that she lacks personal knowledge of
      Defendants' process in 2021 as she was purportedly hired in 2022. Rule 602 provides that "[a]
15    witness may testify to a matter only if evidence is introduced sufficient to support a finding that the
      witness has personal knowledge of the matter." *Rhodes v. Sutter Health*, 940 F. Supp. 2d 1258,
16    1262 (E.D. Cal. 2013). Here, the Court finds Plaintiffs' argument in pointing to a lack of
17    information on an individual's personal social media profile unavailing to refute whether Ms. Cole
      had personal knowledge of Defendants' exemption request review process in 2021. Indeed, the
18    Court finds Ms. Cole's declaration includes sufficient foundation to establish she has personal
      knowledge of the matter given her attestation she is currently employed with Galactic and is
19    familiar with and has access to information regarding Galactic's corporate structure, business
      operations, policies and procedures regarding the COVID-19 vaccine, including review of
20    exemptions to the COVID-19 vaccine policy from 2020 to 2022. *See* (Doc. 59-4 ¶ 3); *Bellah v.*
21    *American Airlines Inc.*, 623 F. Supp. 2d 1183, 1186 (E.D. Cal. 2009) ("Personal knowledge may
      be inferred from the affiant's position.") (citing *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000);
22    *Self–Realization Fellowship Church v. Ananda Church of Self–Realization,* 206 F.3d 1322, 1330
23    (9th Cir. 2000)). Plaintiffs' objections to Ms. Cole's declaration are overruled.

24        [3] Because Plaintiffs' challenge to Ms. Cole's declaration is overruled (*see supra*), their
      dispute regarding this fact is without merit. (Doc. 67 ¶ 7).
25
26        [4] Because Plaintiffs' challenge to Ms. Cole's declaration is overruled (*see supra*), their
      dispute regarding this fact is without merit. (Doc. 67 ¶ 8).
27
28        [5] Because Plaintiffs' challenge to Ms. Cole's declaration is overruled (*see supra*), their
      dispute regarding this fact is without merit. (Doc. 67 ¶ 10).

1    included a review of the impact an exemption request would have Galactic.  *Id.* ¶ 10; (Doc. 59-4 ¶

2    9).  In assessing the impact an employee's request would have on Galactic, the Panel reviewed,

3    *inter alia*, testing logistics and associated costs, including for KN95 masks, flights for employees

4    and medical personnel, medical screenings, safety supplies, frequent testing, increased sick leave

5    and pay, strain on Galactic's resources, and risk of spreading infection to others. [6]  *Id.* ¶ 11.

6                        2.    The Federal Mandate and Nationwide Injunction

7            On September 9, 2021, President Biden signed Executive Order 14042 (the "federal

8    mandate") requiring federal contractors to implement a COVID-19 vaccine policy.[7]

9            On December 7, 2021, a federal district court in *State of Georgia v. Biden*, No. 1:21-cv-163

10   (S.D. Ga. Dec. 7, 2021), granted a nationwide injunction prohibiting the federal government from

11   enforcing the federal contractor vaccine mandate, changing the deadline for all covered federal

12   employees to be vaccinated from December 8, 2021, to January 18, 2022.[8]  (Doc. 72 ¶ 6).  The

13   Eleventh Circuit Court of Appeals vacated the nationwide scope of the injunction and limited its

14   affirmance of the district court's preliminary injunction to the seven named plaintiffs in that action.

15   *See generally Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022).

16                       3.    Plaintiffs' Termination, EEOC Charges, and Testimony

17           Plaintiffs Baron and Carrera worked for Galactic at its facility in Mojave, California.  (Doc.

18   59-3 ¶¶ 4, 24).  Plaintiff Upton-Knittle worked for Galactic at its facility located in Cruces, New

19   Mexico.  *Id.* ¶ 13.  Plaintiffs Mondoux and Mourkos began their employment with Galactic at the

20   California facility and subsequently were relocated to the New Mexico facility for continued

21   employment.  *Id.* ¶¶ 8-9, 19-20.  Plaintiffs each submitted a request for a religious exemption from

22   Galactic's COVID-19 vaccine requirement.  *Id.* ¶¶ 5, 10, 14, 16 (Upton-Kittle's second religious

23

24           [6] Because Plaintiffs' challenge to Ms. Cole's declaration is overruled (*see supra*), their
     dispute regarding this fact is without merit.  (Doc. 67 ¶ 11).

25

26           [7] https://www.federalregister.gov/documents/2021/09/14/2021-19924/ensuring-adequate-
     covid-safety-protocols-for-federal-contractors (last visited August 17, 2025).

27
             [8] The Court may take judicial notice of court records.  *United States v. Wilson*, 631 F.2d
28   118, 119 (9th Cir. 1980).

                                                        5

1   exemption request), 21, 25.  Galactic considered each request for accommodation and notified each

2   Plaintiff that it could not grant their respective requests because it would create an undue hardship.[9]

3   *Id.* ¶¶ 6, 11, 15, 17, 22, 26.  Plaintiffs did not get vaccinated, and each was terminated from

4   Galactic's employment on December 31, 2021.  *Id.* ¶¶ 7, 12, 18, 23, 27.

5        Plaintiffs each filed a charge of discrimination with the Equal Employment Opportunity

6   Commission ("EEOC").   The EEOC charges of Baron, Mourkos, and Carrera identify the

7   California Department of Fair Employment & Housing ("DFEH") [10] as the state or local agency.

8   *Id.* ¶¶ 28, 29, 34-37.  The EEOC charges of Mondoux and Upton-Knittle identify the New Mexico

9   Department of Workforce Solutions, Human Rights Bureau as the state or local agency.  *Id.* ¶¶ 30-

10  33.

11       Plaintiffs each filed an individual complaint[11] alleging *inter alia* that their religious beliefs

12  and practices were motivating factors in their termination, Galactic refused to accommodate or

13  explore an accommodation based on their religious beliefs, each suffered damages because of

14  Galactic's unlawful discriminatory actions, and Galactic intentionally violated their rights under

15  Title VII and FEHA with malice or reckless indifference.  *See id.* ¶¶ 38-66.  Plaintiffs further allege

16  that a "right to sue" letter from either the EEOC or the California DFEH satisfies the requirements

17  of both the EEOC and DFEH.  *Id.* ¶¶ 41, 47, 53, 64.

18       Mourkos alleges that he only obtained a right to sue letter from EEOC.  *Id.* ¶ 59.  Baron

19

20       [9] The parties note in the joint statement of undisputed facts that Plaintiffs do not dispute
    "that this is what Galactic communicated to [each Plaintiff] but reserves [their] right to dispute
21   whether or not it would create an undue hardship to accommodate [their] religious exemption."
    (Doc. 59-3 at 3, n. 1); *see generally id.*
22

23       [10] In July 2022, California Department of Fair Employment and Housing changed its name
    to the "Civil Rights Department" ("CRD").  *Costamagna v. McKesson Corp.*, No. 2:23-cv-01008-
24   MCE-DB, 2024 WL 871290, at *4, n.3 (E.D. Cal. Feb. 29, 2024).   Both terms are used
    interchangeably herein.
25

26       [11] The complaints of Baron, Mondoux, Upton-Knittle, and Mourkos each allege the same
    five claims for: (1) Title VII retaliation; (2) Title VII failure to provide religious accommodation;
27   (3) FEHA retaliation; (4) FEHA failure to provide religious accommodation; and (5) wrongful
    termination in violation of public policy.  (Doc. 59-3 ¶¶ 38, 44, 50, 56).  Carrera's complaint
28   includes the same five claims and adds an additional claim for Title VII disparate impact based on
    religion.  *Id.* ¶ 61.

6

only recalls receiving a right to sue letter from EEOC. (Doc. 67 ¶ 17). Mondoux received an email confirmation from EEOC after submitting his charge but did not receive a confirmation from DFEH/CRD. *Id.* ¶ 19. Plaintiffs did not file a claim or charge with DFEH/CRD, have not had any communication with or received a case or file number from DFEH/CRD, and did not receive a right to sue from DFEH/CRD. *Id.* ¶¶ 16, 20, 22, 24. The CRD does not have any record of a charge filed by any of the Plaintiffs. *Id.* ¶¶ 18, 21, 23, 25, 53.

Baron admits that he does not have any evidence that Galactic's decision to deny his religious exemption request was malicious or intended to hurt him. (Doc. 59-3 ¶ 67). Baron's responses to Defendants' special interrogatories do not identify or allege any punitive damages. *Id.* ¶ 68. Baron further admits that he does not believe he was retaliated against by Galactic. *Id.* ¶ 69. Baron does not have any evidence to dispute that the purpose of Galactic's vaccine policy was to ensure workplace safety and efficiency. (Doc. 67 ¶ 32). Baron conceded that Galactic did not reference his religion or religious belief in connection with his termination. *Id.* ¶ 30.

Mondoux believes he is entitled to punitive damages because Galactic "willfully" ignored its responsibility to accommodate his religious beliefs. (Doc. 59-3 ¶ 70). Mondoux's responses to the special interrogatories do not identify or allege any punitive damages. *Id.* ¶ 71. Mondoux testified that he thought Galactic's decision to deny his religious exemption request was "its way of protecting themselves from losing a lot of money when people weren't vaccinated based on something it believed." *Id.* ¶ 72. Mondoux admitted that he does not believe Galactic's decision to deny his request was intended to hurt him. *Id.* ¶ 73. Mondoux further testified that he believed Galactic's decision to terminate him for not getting the vaccine was malicious because "requiring someone to do something that is unproven, unnecessary for the work that they are being performed and the things that they are doing was … uncalled for." *Id.* ¶ 74. Mondoux admits that this testimony was his own personal belief and that he did not have any evidence to support this belief. *Id.* ¶ 75. Mondoux concedes that he does not know who made the decision to deny his exemption request or what parameters were reviewed in connection with evaluating his request. *Id.* ¶ 76. Mondoux further admits that he does not have any evidence that the denial of his request was because of his religion. *Id.* ¶ 77. Mondoux does not have any evidence to dispute that the purpose

1   of Galactic's vaccine policy was to ensure workplace safety and efficiency.  (Doc. 67 ¶ 41).  He

2   agrees that there is nothing in his separation notice that references his religion and no one told him

3   that he was going to be terminated because of his religion.  *Id.* ¶ 39.

4         Upton-Knittle alleges that he is entitled to punitive damages because Galactic willfully

5   ignored its duty to accommodate his exemption.  (Doc. 59-3 ¶ 78).  Upton-Knittle admits that he

6   did not believe Galactic's decision to deny his exemption request was intended to hurt him and that

7   he does not know if its decision was malicious.  *Id.* ¶ 79.  Upton-Knittle also admits that he did not

8   think Galactic's decision to terminate his employment was intended to cause him harm.  *Id.* ¶ 80.

9   Upton-Knittle admitted that Galactic communicated that the vaccine requirement was part of its

10  efforts to maintain a safe workplace and safeguard the health and well-being of its employees.  *Id.*

11  ¶ 81.  Upton-Knittle concedes that he does not know what Galactic reviewed or what parameters it

12  followed to evaluate his exemption request.  *Id.* ¶ 82.  Upton-Knittle admits that no one at Galactic

13  told him the denial of his exemption was due to his religion.  *Id.* ¶ 83.  Upton-Knittle does not

14  believe he was retaliated against by Galactic.  *Id.* ¶ 84.  Additionally, he does not know who made

15  the decision to deny his exemption request and does not have any documents or witnesses to dispute

16  that Galactic's vaccine policy was to ensure workplace efficiency.  (Doc. 67 ¶¶ 44, 46).

17        Mourkos alleges that he is entitled to damages because Galactic did not engage in the

18  interactive process and did not explain how it determined accommodating his exemption request

19  would create an undue hardship.  *Id.* ¶ 85.  Mourkos testified that he believes Galactic's decision

20  regarding his exemption request was malicious due to lack of communication, lack of providing

21  him information, and ultimately his termination.  *Id.* ¶ 86.  Mourkos believes his termination was a

22  "casualty" of "the increasing polarization and politization of everything, left, right, and center that's

23  going on in the country today."  *Id.* ¶ 87.  Mourkos admits that he was informed that his exemption

24  request was denied because it would create an undue hardship, not because of his religion.  *Id.* ¶

25  88.  Mourkos admits that no one at Galactic told him he was being terminated because of his

26  religious beliefs.  *Id.* ¶ 89.  Mourkos admits he does not know what Galactic reviewed in evaluating

27  his exemption or who reviewed his exemption.  *Id.* ¶ 90.  Mourkos concedes that he does not have

28  any information to dispute accommodating his exemption was financially costly to Galactic.  *Id.* ¶

91.

Carrera claims he is entitled to punitive damages because Galactic denied his request for an exemption based on undue hardship and Carrera's onsite job duties. *Id.* ¶ 92. Carrera clarified that he believes Galactic's conduct was malicious because Galactic did not specifically discuss accommodations with him or provide him with evidence in support of its position. *Id.* ¶ 93. Carrera admits that he does not know who made the decision to deny his exemption request or what Galactic reviewed. *Id.* ¶ 94. Carrera concedes that Galactic communicated that he was being terminated for workplace safety, not his religion. *Id.* ¶ 95.

## II.    <u>Governing Authority</u>

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

On summary judgment, each party's position must be supported by: (1) citing to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(1). The court may consider other materials in the record not cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). Furthermore, "[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Nevada Dep't of Corr v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citations and internal quotations omitted). The focus is on the admissibility of the evidence's contents rather than its form. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).

"The moving party initially bears the burden of proving the absence of a genuine issue of

material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).  To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323).  The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson,* 477 U.S. at 252).  However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation and citation omitted).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated the absence of any genuine issue of material fact and that judgment is appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### III.    Unopposed Requests for Judicial Notice

Defendants request the Court take judicial notice of various exhibits filed in connection with their motion for partial summary judgment, including various certificates of no records from the California Civil Rights Department ("CRD") related to each of the Plaintiffs and the individual complaints filed in this action.  (Doc. 59-7).  Plaintiffs request the Court take judicial notice of the

1    2021 and 2022 worksharing agreements between the CRD and the EEOC.  (Doc. 69).

2         As confirmed by the undersigned during the motion hearing, neither party opposes the

3    other's request for judicial notice, no opposition to these requests are raised throughout the parties'

4    filings, and there does not appear to be any dispute as to the authenticity of the subject documents.

5    *See* (Docs. 59, 66, 69, 71).  Further, the Court finds it appropriate to judicially notice the requested

6    documents and contents therein.  *See* Fed. R. Evid. 201(c) (court "must take judicial notice if a

7    party requests it and the court is supplied with the necessary information."); *Tamakloe v. Vertex*

8    *Aerospace, LLC*, No. 1:24-cv-00053-KES-CDB, 2025 WL 1825014, at *3 (E.D. Cal. July 2, 2025)

9    (judicially noticing administrative EEOC claims and related documents including an EEOC right

10   to sue letter where authenticity was not disputed) (citing *Overstreet v. Living Spaces Furniture,*

11   *LLC*, No. CV-23-00248-PHX-ROS, 2023 WL 4408269, at *3 (D. Ariz. Jul. 7, 2023)); *Knox v.*

12   *Contra Costa Cnty.*, No. 20-cv-01449-JCS, 2022 WL 2290686, at *10, n.6 (N.D. Cal. June 24,

13   2022) (in ruling on a defendant' motion for summary judgment or alternatively for partial summary

14   judgment, taking judicial notice of EEOC worksharing agreements as public records not subject to

15   reasonable dispute); *Kennedy v. Columbus Mfg., Inc.*, No. 17-cv-03379-EMC, 2017 WL 4680079,

16   at *4, n.2 (N.D. Cal. Oct. 18, 2017) (taking judicial notice of EEOC workshare agreement as a

17   public government record that is not subject to reasonable dispute); *Hause v. The Salvation Army*,

18   No. CV 07-5249 CAS (CWx), 2007 WL 4219450, at *1, n.2 (C.D. Cal. Nov. 27, 2007) (same).

19   Therefore, the Court grants both Defendants' and Plaintiffs' requests for judicial notice.

20   **IV.    Discussion**

21        **A.    Mootness of Plaintiffs' Retaliation Claims under Title VII and FEHA**

22        As noted above, the Court granted the parties' construed stipulated request for leave to file

23   first amended complaints to remove Plaintiffs' retaliation claims under Title VII and FEHA.  (Docs.

24   56, 58).  First amended complaints filed on June 4, 2025, (Docs. 61-65) removed all of Plaintiffs'

25   retaliation claims.  Additionally, Plaintiffs concede in their opposition brief that retaliation claims

26   are not pled in the amended complaints.  (Doc. 66 at 25).  Therefore, the issue of Plaintiffs'

27   retaliation claims in Defendants' motion for partial summary judgment is moot.

28        The Court addresses below Defendants' motion for summary judgment on (1) Plaintiffs'

1    FEHA claims for failure to provide religious accommodation, and (2) Plaintiffs' prayer for punitive

2    damages under both FEHA and Title VII.[12]

3            **B.    Exhaustion of Remaining FEHA Claims**

4                    1.    Parties' Contentions

5            Defendants move the Court for partial summary judgment on all of Plaintiffs' remaining

6    claims under FEHA (*i.e.*, Plaintiffs' FEHA claims for failure to provide religious accommodation

7    and prayer for punitive damages) because Plaintiffs failed to exhaust their administrative remedies.

8    (Doc. 59 at 2-3).  Specifically, Defendants contend Plaintiffs did not file administrative complaints

9    with or receive a right to sue notice from the CRD as required under FEHA.  (Doc. 59-1 at 20).

10   Defendants argue Plaintiffs, though they have filed their administrative complaints with the EEOC

11   and received a right to sue notice from the EEOC, failed to file administrative complaints with CRD

12   or receive a right to sue notice from CRD and have therefore failed to exhaust their administrative

13   remedies required to assert claims under FEHA.  *Id.* at 22.  Defendants contend Plaintiffs are unable

14   to cure this defect as the deadline has passed to file administrative complaints with the CRD.  *Id.*

15   Defendants further argue that even if Plaintiffs' EEOC claims were dually filed with the CRD

16   pursuant to those agencies' worksharing agreement, New Mexico-based Plaintiffs Mondoux and

17   Upton-Knittle's EEOC charges identify a New Mexico-based state agency, and not CRD, such that

18   those Plaintiffs claims do not satisfy California FEHA exhaustion requirements and must be

19   dismissed for failure to exhaust.  *Id.* at 23.

20           Plaintiffs argue that because the EEOC has a dual worksharing agreement with CRD,

21   Plaintiffs Baron, Mourkos, and Carrera—each of whom were employed at Defendants' California

22   location and signed an EEOC charge—need not have filed a separate charge with CRD.  (Doc. 66

23   at 22-23).  Plaintiffs contend the dual worksharing agreement operates such that filing with one

24   agency leads to automatic dual-filing with the other agency.  *Id.* at 21.  Plaintiffs contend California

25   FEHA laws apply to Plaintiffs Mondoux and Upton-Knittle, both of whom were employed at

---

27   [12] Defendants' motion for partial summary judgment does not address Plaintiffs' claims for
     failure to provide religious accommodation under Title VII and for common law wrongful
28   termination; accordingly, those claims are not at issue in ruling on the instant motion.  *See, e.g.*,
     (Doc. 1 at 6-7, 10-13) (Plaintiff Baron's complaint).

1  Defendants' New Mexico location, because there is a sufficient nexus between their employment

2  and Defendants' California-based decision makers' unlawful conduct.  *Id.* at 23-24.

3       In reply, Defendants contend Plaintiffs failed to cite to any legal authority holding that filing

4  an EEOC charge and receiving an EEOC right-to-sue notice satisfies FEHA's exhaustion

5  requirement.  (Doc. 71 at 12).  As to New Mexico-based Plaintiffs Mondoux and Upton-Knittle,

6  Defendants argue Plaintiffs have failed to set forth any plausible legal or factual basis that their

7  EEOC charges that identify a New Mexico state agency were jointly filed or should be

8  constructively filed with the CRD, and those claims should be dismissed.  *Id.* at 16.

9            2.   <u>Governing Authority</u>

10       "In order to bring a civil action under FEHA, the aggrieved [employee] must exhaust the

11  administrative remedies provided by law."  *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th

12  Cir. 2001) (quoting *Yurick v. Super. Ct.*, 14 Cal.4th 479, 492 (1989)).  In California, "[a]n employee

13  exhausts administrative remedies by filing a complaint with the DFEH within one year of the

14  occurrence of the allegedly unlawful act, and obtaining a notice of the right to sue from [DFEH]."

15  *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 902 (E.D. Cal. 2017) (citing *Blum v. Super. Ct.*, 141

16  Cal. App. 4th 418, 422 (2006)); *see Salazar v. Cargill Meat Solutions Corp.*, No. 1:18-cv-00847-

17  LJO-EPG, 2019 WL 3936292, at *5 (E.D. Cal. Aug. 20, 2019) ("Under California law, an employee

18  must exhaust the administrative remedy under FEHA by filing an administrative complaint with

19  the DFEH and obtaining the DFEH's notice of a right to sue before bringing a FEHA claim in

20  court.") (citing *Martin v. Lockheed Missiles & Space Co*., 29 Cal. App. 4th 1718, 1724 (1994));

21  *Rao v. AmerisourceBergen Corp*., No. CIV S-08-1527 DAD PS, 2010 WL 3767997, at *9 (E.D.

22  Cal. Sept. 22, 2010) ("The timely filing of an administrative complaint is a prerequisite to the

23  bringing of a civil action for damages under the FEHA.").  "Under FEHA, 'the failure to exhaust

24  an administrative remedy is a jurisdictional, not a procedural, defect,' and thus [a] failure to

25  exhaust … is a ground for a defense summary judgment."  *Salazar*, 2019 WL 3936292 at *5

26  (citations omitted).

27       "The purpose of FEHA's administrative exhaustion requirement is to ensure DFEH is

28  provided the opportunity to resolve disputes and eliminate unlawful employment practices through

1    conciliation." *Washington v. California City Corr. Ctr.*, 871 F. Supp. 2d 1010, 1022 (E.D. Cal.

2    2012) (citing *Wills v. Super. Ct.*, 195 Cal. App. 4th 143, 153 (2011)); *see id.* ("If, following receipt

3    of a complaint, the DFEH fails to resolve the case or to file an accusation against the employer

4    within 150 days, it must notify the employee in writing of his or her right to file a civil action under

5    the FEHA") (citing *Okoli v. Lockheed Technical Operations Co.*, 36 Cal. App. 4th 1607, 1613

6    (1995)).

7                        3.    <u>Analysis</u>

8         The parties contest whether Plaintiffs are required to file a separate charge with and receive

9    a right to sue notice letter from the CRD to administratively exhaust remedies to bring a claim

10   under FEHA in light of the EEOC's dual worksharing agreement with CRD.

11        In *Martin v. Lockheed Missiles & Space Co.*, the California Court of Appeal found that a

12   plaintiff's receipt of an EEOC right-to-sue letter was insufficient to exhaust her FEHA claims

13   because she failed to file her amended charge with DFEH.  29 Cal. App. 4th at 1724-26.  The

14   *Martin* court held that DFEH was required to act only on charges filed directly with DFEH, and

15   plaintiff's amendments to her initial EEOC charge did not entitle her to a DFEH right-to-sue letter.

16   *Id.* at 1727.  The court found plaintiff's assertion—that a dual worksharing agreement between

17   EEOC and DFEH operates such that a filing with the EEOC constructively files with DFEH to

18   trigger DFEH's duty to act or issue a right-to-sue letter—unpersuasive on statutory policy grounds

19   and affirmed that a plaintiff must file a charge with DFEH to satisfy the administrative exhaustion

20   requirement.  *Id.* at 1728; *see Reynoso v. Cnty. of Ventura*, No. 2:19-cv-05687-KES, 2022 WL

21   2092909, *6 (C.D. Cal. Mar. 8, 2022) ("[O]ther courts have applied *Martin* uncritically to dispose

22   of FEHA claims where the plaintiff never obtained a right-to-sue letter from the DFEH.").

23        In *Dang v. Solar Turbines Inc.*, the Ninth Circuit Court of Appeals affirmed a trial court's

24   grant of summary judgment on all FEHA claims due to failure to exhaust administrative remedies,

25   citing to *Martin* as precedent that an "EEOC right-to-sue notice does not satisfy administrative

26   exhaustion requirements for the California FEHA."  452 Fed. Appx. 804, 805 (9th Cir. 2011).  In

27   the trial court, the plaintiff limited the scope of his EEOC charge to disability-based discrimination

28   and retaliation and received an EEOC right-to-sue letter on those allegations, but failed to include

                                           14

1    his claims based on race, national origin, sex, and age in the EEOC charge.  *Dang v. Solar Turbines*

2    *Inc.*, No. 07cv520-MMA(POR), 2009 WL 10671924, at *6 (S.D. Cal. Apr. 8, 2009).  The trial court

3    found that because these additional allegations "were not made part of [plaintiff's] EEOC charge,

4    and are not reasonably related thereto, the claims are statutorily barred" as plaintiff "has not

5    properly exhausted his administrative remedies as to these claims."  *Id.*  Additionally, the trial court

6    found plaintiff was barred from asserting a disability claim under FEHA as the "EEOC right-to-sue

7    notice does not satisfy the jurisdictional requirement that [he] have exhausted his administrative

8    remedies [under FEHA]" notwithstanding the court's acknowledgement that worksharing

9    agreements between the EEOC and DFEH operate such that charges filed with either agency are

10   automatically forwarded to the other.  *Id.* at *4, 6.

11       In *Reynoso*, the court considered whether an EEOC right-to-sue letter satisfies FEHA's

12   exhaustion requirement.  2022 WL 2092909 at *8.  The court considered *Martin* as precedent in

13   California "since 1994" as "California appellate courts continue to apply it" as well as a number of

14   "unpublished district court decisions finding FEHA claims unexhausted where the plaintiff never

15   obtained a DFEH right-to-sue letter."  *Id.* at *10 (citing *inter alia Castillo v. Garrett*, No. 1:13-CV-

16   00412-LJO, 2014 WL 4792585, at *8 (E.D. Cal. Sept. 24, 2014) & *Prejean v. Lynwood Unified*

17   *Sch. Dist.*, No. CV0705053DDPCTX, 2008 WL 11340320, at *1 (C.D. Cal. Apr. 7, 2008)).  The

18   court rejected plaintiff's argument that receiving a right-to-sue letter from either the EEOC or

19   DFEH automatically exhausts all federal and state claims in the alleged charge, noting that DFEH's

20   website "disclaims any notion of constructive EEOC filing and automatic federal exhaustion[.]"

21   *Id.*  Because the plaintiff failed to obtain a DFEH right-to-sue letter and the worksharing agreement

22   did not operate as to entitle her to "receive one merely by virtue of filing an EEOC charge," the

23   court found the plaintiff failed to exhaust her FEHA claims and granted the defendant summary

24   judgment on all FEHA claims.  *Id.* at 11.

25       The Court finds *Martin* and the numerous decisions of courts that have applied and followed

26   it persuasive.  As noted above, it is undisputed that Plaintiffs filed EEOC charges noting their

27   respective state agency, with Baron, Mourkos, and Carrera identifying DFEH as the state agency,

28   and Mondoux and Upton-Knittle identifying the New Mexico Department of Workforce Solutions,

1    Human Rights Bureau.  (Doc. 59-3 ¶¶ 28-37).  It is also undisputed that Plaintiffs have not filed a

2    charge with DFEH/CRD, and DFEH/CRD does not have any record of a charge filed by any of the

3    Plaintiffs.  *See* (Doc. 67 ¶¶ 16, 18, 20-25, 53).  Plaintiffs concede that they have not had any

4    communication with, and have not received a case, file number, or any right-to-sue letter from

5    DFEH/CRD.  *Id.*

6           Plaintiffs principally rely on *Green v. Los Angeles Cnty. Superintendent of Schs.* (883 F.2d

7    1472 (9th Cir. 1989)) and *Peterson v. State Dep't of Corrs. and Rehab.* (319 Fed. Appx. 679 (9th

8    Cir. 2009)) for the proposition that because of the agencies' workshare agreement, Plaintiffs' filing

9    of a charge with the EEOC satisfies FEHA's exhaustion requirement as to DFEH/CRD.  (Doc. 66

10   at 21-22).  However, FEHA's exhaustion requirement was not at issue in either *Green* or *Peterson*;

11   rather, the courts considered whether, under a workshare agreement, the EEOC had constructive

12   receipt of a plaintiff's charge filed with DFEH for purposes of deciding the timeliness of the filing

13   under Title VII.  Thus, because these decisions resolved the issue of a charge's timeliness under

14   Title VII, they do not support Plaintiffs' argument here.  *See Martin*, 29 Cal. App. 4th at 1726

15   ("[U]nder [Title VII], an EEOC right-to-sue letter satisfies the requirement of exhaustion of

16   administrative remedies *only* for purposes of an action based on Title VII.") (emphasis in original).

17          In short, Plaintiffs have failed to obtain a right-to-sue letter from DFEH/CRD such that each

18   Plaintiff has failed to exhaust administrative remedies under FEHA.  Further, because more than

19   one year has passed from the date Plaintiffs were terminated from their employment with Galactic

20   (*see* Doc. 59-3 ¶¶ 7, 12, 18, 23, 27), Plaintiffs are no longer able to timely exhaust administrative

21   remedies to bring their claims and prayer for punitive damages under FEHA.  *Ayala*, 264 F. Supp.

22   3d at 902; *Salazar*, 2019 WL 3936292 at *5; *Rao*, 2010 WL 3767997 at *9 ("The timely filing of

23   an administrative complaint is a prerequisite to the bringing of a civil action for damages under the

24   FEHA.").  Therefore, Defendants' motion for partial summary judgment on Plaintiffs' FEHA

25   claims will be granted due to Plaintiffs' failure to exhaust.  *See, e.g.*, *Kenneth Lenk v. Monolithic*

26   *Powers Sys. Inc.*, No. CV-23-02083-PHX-SHD, 2025 WL 2257509, at *9 (D. Az. Aug. 6, 2025)

27   ("several courts have rejected the argument that an EEOC right-to-sue letter can exhaust FEHA

28   administrative remedies.") (citing *Martin*, 29 Cal. App. 4th at 1724)); *Gordon v. The Bay Area Air*

1   *Quality Management Dist.*, No. C08–3630 BZ, 2010 WL 147953, at *1 (N.D. Cal. Jan 12, 2010)

2   (finding summary judgment is appropriate where a plaintiff fails to exhaust administrative remedies

3   because plaintiff did not obtain a right-to-sue letter from DFEH as required by FEHA); *Garrett*,

4   2014 WL 4792585 at *8 ("Castillo's right-to-sue letter from the EEOC is insufficient to show that

5   he exhausted his administrative remedies as required to bring a civil case under FEHA.").

6         **C.**      **Prayer for Punitive Damages**

7               1.      <u>Parties' Contentions</u>

8         Defendants move the Court for partial summary judgment on Plaintiffs' prayer for punitive

9   damages under both FEHA and Title VII[13] because Plaintiffs cannot meet their burden to show

10  malice, oppression, or fraud by a managing agent with clear and convincing evidence.  (Doc. 59 at

11  2-3); (Doc. 71 at 16).  Defendants contend Plaintiffs cannot "present a shred of evidence of create

12  a triable issue that any of Galactic's managing agents engaged in any conduct that could give rise

13  to liability for punitive damages."  (Doc. 59-1 at 25).  Specifically, Defendants argue Plaintiffs

14  could not identify any officer, director, or managing agent of Defendants "who made the decision

15  to deny their respective requests for a religious exemption or terminate their employment."  *Id.* at

16  25-26.  Defendants contend Plaintiffs' basis for punitive damages—allegations that Galactic did

17  not engage in the interactive process and did not accommodate Plaintiffs' requests for religious

18  exemptions—is inadequate to establish any malice, oppression, or fraud by Defendants as all

19  Plaintiffs concede Galactic's COVID-19 Vaccine Policy applied to all of its employees regardless

20  of their religious beliefs, Plaintiffs have testified that they do not believe Galactic acted maliciously

21  or with intent to injure them, and evidence shows that Galactic conducted an individualized inquiry

22  in reviewing each exemption request.  *Id.* at 26-27.

23             [13] Plaintiffs' note in their opposition that Defendants' motion "appears to request summary

24  judgment of Plaintiffs' FEHA claims for punitive damages" and "it is Plaintiffs' understanding, in
    opposing this motion, that Defendants are not requesting judgment as a matter of law on Plaintiffs'

25  Title VII claims for punitive damages" but that it "will still include a few brief legal points for their
    Title VII claims for punitive damages."  (Doc. 66 at 25).  However, because Defendants' motion

26  argues generally that Plaintiffs' prayer for punitive damages fails as a matter of law (*see* Doc. 59-
    1 at 29-34), and Defendants' reply brief clarifies that they seek summary judgment on Plaintiffs'

27  request for punitive damages under FEHA or Title VII (*see* Doc. 71 at 16, 25), the Court finds
    Plaintiffs' prayer for punitive damages under both FEHA and Title VII is at issue in ruling on the

28  instant motion.

Plaintiffs contend they have adduced sufficient facts to support their prayer for punitive damages as they have "put forth evidence of a record of [Defendants'] company being on notice about the events that form the basis of Plaintiffs' claims, including via the submission of their religious exemption requests and communications to Defendants' People Director seeking an explanation of Defendants' claim of undue hardship and absence of an interactive process." (Doc. 66 at 25-26). Plaintiffs argue they have put forth sufficient evidence of Defendants' "conscious and total disregard" of Plaintiffs' rights through Defendants' decisions to: "ignore their own policy statement regarding the interactive process; outright reject the option of remote work or any reasonable accommodations, even for those employees who were working remotely; put forth claims of undue hardship for the exemption denials without any proof of what undue hardship entailed; put forth claims of safety for exemption and interactive process denials, when Defendants then chose to not disclose a [COVID]-19 outbreak to their employees; [and] move forward with termination of all Plaintiffs and deprive them of their livelihood after years of dedicated service when the federal vaccine mandate was on hold nationwide." *Id.* at 26-27. Plaintiffs argue Defendants' People Director, Yajaira Rose-Smith, and Defendants' Chief People Officer, Aparna Chitale, qualify as managing agents such that their actions could be imputed to Defendants. *Id.* at 28.

In reply, Defendants argue Plaintiffs have failed to offer evidence that Ms. Rose-Smith and Ms. Chitale were decision makers regarding Plaintiffs' requests for religious exemption other than providing their job titles and speculative testimony that they are managing agents. (Doc. 71 at 16-17). Defendants argue Plaintiffs have failed to present any evidence to refute Defendants' denial of each of Plaintiffs' requests for a religious exemption based on undue hardship[14] and have otherwise failed to provide any admissible evidence to support a finding of punitive damages. *Id.*

---

[14] The parties' briefing does not address or provide substantive argument as to whether Defendants have established an undue hardship and merely references Defendants' denial of Plaintiffs' religious exemption requests on the basis it would cause an undue hardship. *See generally* (Docs. 59, 66, 71). Defendants clarify in their reply brief that they are not asking for a determination of whether it has established undue hardship in their motion for partial summary judgment. (Doc. 71 at 17, n. 2). Accordingly, the issue of undue hardship is not at issue here.

1    at 17.

2              2.    Governing Authority

3         Defendants seek partial summary judgment on Plaintiffs' prayer for punitive damages under

4    both Title VII and FEHA.  (Doc. 71 at 16).  Because the Court found *supra* that all of Plaintiffs'

5    claims under FEHA are barred for Plaintiffs' failure to exhaust administrative remedies, Plaintiffs

6    no longer have a viable cause of action to support a prayer for punitive damages under FEHA.  *See*

7    *Wheat v. Wal-Mart Associates, Inc.*, No. 1:22-cv-01524-BAM, 2025 WL 1370011, at *23 (E.D.

8    Cal. May 12, 2025) ("California law does not provide a separate claim for relief of punitive

9    damages.… Instead, a claim for punitive damages is merely an additional remedy that is dependent

10   on a *viable cause of action* for an underlying tort.") (citing *569 E. Cnty. Boulevard LLC v.*

11   *Backcountry Against the Dump, Inc*., 6 Cal. App. 5th 426, 430, n. 3 (2016), *as modified on denial*

12   *of reh'g* (Dec. 29, 2016); *Foster v. Bank of America, Nat. Ass'n*, No. 1:13–CV–1188–LJO–BAM,

13   2014 WL 4092311, at *7 (E.D. Cal. Aug. 14, 2014) ("Because the Court finds that BANA is entitled

14   to summary judgment on all of Plaintiff's claims, Plaintiff necessarily is not entitled to an award of

15   punitive damages.") (citing *Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1086 (E.D. Cal. 2012)

16   ("[D]ismissal of plaintiffs' claims warrants dismissal of punitive damages claims.")); accord

17   *Commodore Home Sys., Inc. v. Super. Ct.*, 32 Cal. 3d 211, 221 (1982)).  Thus, remaining at issue

18   here is whether Defendants are entitled to partial summary judgment on Plaintiffs' prayer for

19   punitive damages under Title VII.[15]

20        A plaintiff may recover punitive damages under Title VII against an employer if the plaintiff

21   demonstrates that the employer engaged in discrimination "with malice or with reckless

22   indifference to the federally protected rights" of the plaintiff.  *Ortiz v. Georgia Pacific*, 973 F. Supp.

23   2d 1162, 1186 (E.D. Cal. 2013) (citing 42 U.S.C. § 1981(b)(1)).  "The standard for proving punitive

24   damages under [Title VII] is easier to satisfy than the standard under FEHA[, which] allows the

25   award of punitive damages for 'reckless indifference.'  This evidentiary standard is more lenient

26   than that under … FEHA['s] 'oppression, fraud, or malice' [standard.]"  *Taylor v. ScottPolar Corp.*,

27   _____

28   [15] The Court's consideration of Plaintiffs' prayer for punitive damages here does not reach the merits of Plaintiffs' remaining claims under Title VII for failure to provide religious accommodation to which the prayer for punitive damages is tethered.

995 F. Supp. 1072, 1080 (D. Az. 1998) (quoting *Stender v. Lucky Stores, Inc.*, 903 F. Supp. 259, 324 (N.D. Cal. 1992)).

"[A] defendant is appropriately subject to punitive damages if it acts 'in the face of a perceived risk that its actions will violate federal law.'" *Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174, 1197 (9th Cir. 2002) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)). Generally, "intentional discrimination is enough to establish punitive damages liability." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 515 (9th Cir. 2000); *see Ortiz*, 973 F. Supp. 2d at 1187 ("If a plaintiff is able to establish intentional discriminatory conduct, that plaintiff 'would by definition have satisfied the requirement for showing the "'reckless indifference'" required for an award of punitive damages.'") (citing *Stender v. Lucky Stores, Inc.*, 803 F. Supp. 259, 324 (N.D. Cal. 1992)); *accord*, *Dykzeul v. Charter Communications, Inc*, No. CV 18-05826 DSF (GJSx), 2019 WL 8198218, at *10 (C.D. Cal. Nov. 18, 2019) ("A finding of 'malice' or 'reckless disregard' hinges on an employer's 'knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." ) (citing *Kolstad*, 528 U.S. at 545)).  Evidence of retaliation can satisfy the "malice or reckless indifference" standard for punitive damages under Title VII.  *Ortiz*, 973 F. Supp. 2d at 1187 (citing cases).

A "plaintiff must also impute liability for punitive damages to the employer" which may be done "through traditional agency principles, *e.g.*, 'that a managerial employee acted within the scope of his or her employment.'" *EEOC v. California Psychiatric Transitions, Inc.*, 644 F. Supp. 2d 1249, 1283 (E.D. Cal. 2009) (quoting *Hemmings*, 285 F.3d at 1197).

An employer may nonetheless "escape punitive damages [liability] if it can show that the challenged actions … were contrary to the employer's good faith implementation of an effective antidiscrimination policy." *Costa v. Desert Palace, Inc.,* 299 F.3d 838, 864 (9th Cir. 2002).

3. Analysis

The issue is whether Plaintiffs have shown a genuine dispute of material fact as to whether Galactic engaged in discrimination with malice or reckless indifference to Plaintiffs' rights under federal law such that Defendants are not entitled to summary judgment on the issue of Plaintiffs' prayer for punitive damages under Title VII.

1       The Court finds Plaintiffs have identified sufficient evidence to raise a genuine dispute of

2   material fact that Galactic acted "in the face of a perceived risk that its actions will violate federal

3   law[,]" *Hemmings*, 285 F.3d at 1197, or otherwise engaged in intentional discrimination in failing

4   to accommodate Plaintiffs' exemption requests, *Passantino*, 212 F.3d at 515.  First, a genuine

5   dispute of material fact exists as to whether Defendants knew that it may be acting in violation of

6   federal law in terminating Plaintiffs' employment on December 31, 2021, based on Plaintiffs'

7   failure to get the COVID-19 vaccine by the December 8, 2021, deadline, at the time Defendants,

8   as federal contractors, were subject to a federal injunction changing the deadline for all covered

9   federal employees to be vaccinated from December 8, 2021, to January 18, 2022.  Plaintiffs'

10  deposition testimony raises a material dispute as to whether Defendants' vaccine policy was

11  executed to ensure compliance with the federal mandate given their termination of Plaintiffs'

12  employment on December 31, 2021, prior to the expiration of the changed vaccination compliance

13  deadline.  *See* (Doc. 76-1 at 23, Baron Depo.) (Baron testified he believes he was terminated on

14  December 31, 2021, for "failure to get the COVID vaccine because it was against [his] religious

15  beliefs."); (Doc. 76-2 at 3, Mondoux Depo.) (Mondoux testified that he "feel[s] like [he] was

16  unjustly fired and not given religious exemption for not taking a vaccine that was not truly

17  mandated because [his] termination paper says that it was for the mandate, and not for not following

18  company policy."); *id.* at 4 (Mondoux testified that he was notified from an email on December 3,

19  2021, that he was going to be terminated on December 31, 2021); (Doc. 76-3 at 23) (December 3,

20  2021, email of Aparna Chitale announcing the December 31, 2021, termination date for employees

21  who have not responded to a survey by December 8, 2021, or who have confirmed their choice to

22  not get vaccinated).

23      Second, though the parties' briefing does not address expressly the merits of whether

24  Defendants have established an undue hardship to entitle them to lawfully terminate Plaintiffs

25  without need to make efforts to reasonably accommodate Plaintiffs' religious beliefs, disputed

26  factual issues exist as to whether Defendants intentionally discriminated in terminating Plaintiffs

27  based on their determination that granting their exemption requests would cause an undue hardship.

28  *See Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir. 1993) (noting that undue hardship sufficient

to relieve employer of accommodation requires showing that cost to employer would be more than *de minimis*); *Dykzeul*, 2019 WL 819218 at *10 (denying defendant's motion for summary judgment as to punitive damages under Title VII in finding intentional discrimination where "[t]here are triable issues of fact as to Defendant's defenses and justifications for this decision [to not hire plaintiff because defendant knew she could not work on Saturdays due to her religious observance], but a reasonably jury could certainly conclude that Defendant acted with 'malice' or 'reckless indifference' to Plaintiff's rights."); (Doc. 76-3 at 13-14, Upton-Knittle Depo.) (Upton-Knittle testified that Galactic did not produce any undue hardship or make a statement of what the undue hardship was or referred to given he requested to work completely remote, and his supervisor verbally agreed to that request).

Plaintiffs have shown a material dispute of fact exists as to whether Defendants improperly denied their requests for religious exemption based on what appears to be blanket denials despite Plaintiffs raising reasonable requests for accommodation. *Cf. Dunbar v. Twentieth Century Fox Television*, Case No. CV 22-1075-DMG (JCx), 2024 WL 2107712, at *13 (C.D. Cal. Mar. 8. 2024) (granting defendants' summary judgment motion on Title VII punitive damages claim where plaintiff lacked evidence that employer acted with malice or recklessness with respect to his claimed religious exemption, as "it is undisputed that [employer] continued to work with [plaintiff] in good faith on his medical exemption request, which would have achieved the same result."). For example, Upton-Knittle testified that Galactic indicated it generally would not grant accommodations, refused to provide information thereto, and did not consider his requests for accommodation, including for remote work while having the permission of his direct supervisor, in good faith. *See* (Doc. 76-3, at 9, Upton-Knittle Depo.) (Upton-Knittle testified that John Bacani said that "they wouldn't be granting accommodations, in a roundabout way" and when he reached out to him the next day, he said that "they were instructed not to record that meeting."); *id.* at 15 (Upton-Knittle testified he believes he was wrongfully terminated because he went through Galactic's accommodation procedure and "nothing was actually discussed about accommodations on either side.  And it was just carte blanche denied."); *id.* at 12 (Upton-Knittle referring to a document where he emailed Ms. Rose-Smith that he is able to work remotely "100 percent per [his]

1    director").

2          Additionally, the Court finds Plaintiffs have adduced evidence as to whether Director

3    Yajaira Rose-Smith, as a managerial employee of Galactic, acted within the scope of her

4    employment. *California Psychiatric Transitions, Inc.*, 644 F. Supp. 2d at 1283.  Though Plaintiffs

5    Baron, Mondoux, and Upton-Knittle do not know exactly who made the decision to deny their

6    exemption requests, they testified that they thought Ms. Rose Smith was part of the COVID-19

7    Panel and believe either she, the Panel, or the CIO communicated via email the denials of their

8    accommodation requests.  *See Ellorin v. Applied Finishing, Inc.*, 996 F. Supp. 2d 1070, 1095 (W.D.

9    Wash. 2014) (denying employer's summary judgment motion with respect to punitive damages

10   under Title VII where "factual disputes exist with respect to Mr. Soden's status as a supervisor or

11   senior manager and with respect to employer's timely implementation or distribution of its

12   employee handbook which contained its antidiscrimination policies."); (Doc. 76-3 at 11, Upton-

13   Knittle Depo.); (Doc. 76-2 at 11, Mondoux Depo.); (Doc. 76-1 at 15, 16, Baron Depo.).

14         The Court finds Plaintiffs have raised a genuine dispute of material fact that Defendants

15   intentionally discriminated against them by terminating Plaintiffs despite the then-nationwide

16   injunction delaying the federal vaccine mandate deadline, of engaging in ostensibly blanket denials

17   of their exemption requests while failing to consider in good faith Plaintiffs' individualized requests

18   for accommodations, and the communications of various Galactic personnel who are associated or

19   on the COVID-19 Panel.  *Passantino*, 212 F.3d at 515.  Summary judgment on Plaintiffs' prayer

20   for punitive damages under Title VII will be denied.

21   **V.    Conclusion and Order**

22         Accordingly, IT IS HEREBY ORDERED that:

23   1.   Defendants' unopposed request for judicial notice (Doc. 59-7) and Plaintiffs' unopposed

24         request for judicial notice (Doc. 69) are GRANTED;

25   2.   Defendants' motion for partial summary judgment (Doc. 59) is GRANTED IN PART

26         and DENIED IN PART as follows:

27         a.   Defendants' motion for partial summary judgment is GRANTED as to

28               Plaintiffs' claims under FEHA; and

23

1          b.   Defendants' motion for partial summary judgment is DENIED as to Plaintiffs'

2              prayer for punitive damages under Title VII.

3          The parties are referred to the operative scheduling order and the requirement to timely file

4    a Joint Pretrial Statement.  *See* (Doc. 42 at 5; Doc. 48 at 3).

5    IT IS SO ORDERED.

6      Dated:   __**August 22, 2025**__

7                                                    UNITED STATES MAGISTRATE JUDGE